CRANSTON PRINT WORKS COMPANY

v.

CITY of Cranston et al.

No. 94–469–MP.

Supreme Court of Rhode Island.

Nov. 8, 1996.

Deming E. Sherman, Providence, Nancy W. Kirsch, for Plaintiff.

William F. Holt, Thomas B. DiSegna, Cranston, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari to review the denial by the City Council (council) of Cranston, Rhode Island, of an application by Cranston Print Works Company (CPW or petitioner) for a permit to install two propane tanks on its property in Cranston, Rhode Island. In its petition, CPW contended that the decision of the council was beyond its jurisdiction, against the law and evidence, arbitrary and capricious, and a violation of CPW's equal-protection rights under the Federal and State constitutions. For the reasons stated below, we remand this matter to the council with directions that the council make findings of fact and conclusions of law and report such findings to this Court within ninety days. A summary of the facts relevant to this petition follows.

### Facts and Procedural History

On August 18, 1993, petitioner filed an application with the Cranston Fire Department for a permit to install two 30,000–gallon propane tanks at its textile manufacturing plant. On the following day, the city of Cranston's building inspector and fire chief approved the application. On September 7, 1993, a public hearing was held before the Cranston Safety Services and Licenses Committee (committee), a body comprising several members of the city council. At the hearing, CPW's president and chief executive officer, George Shuster, explained that if his company could install the proposed storage tanks, it could then purchase interruptible gas from the Providence Gas Company that would result in annual savings of approximately $100,000. Anthony J. Palazzo (Palazzo), CPW's vice president in charge of textile operations, testified that the projected savings resulting from the proposed installation would help the company remain competitive, and he asserted that CPW's Rhode Island factory is "the only major plant in our industry in this country that does not have a propane installation." Palazzo added that

CPW operates textile plants in Webster, Massachusetts, and Fletcher, North Carolina, each with four 30,000–gallon propane tanks that have been trouble-free since their installation in 1976.

The petitioner presented testimony in support of its application from a number of witnesses. Don Bouthillier, CPW's director of engineering, testified that the design of the proposed installation met or exceeded the standards established by the National Fire Protection Association for the storage and handling of liquified petroleum gases. Ray Self, vice president and general manager of Combustion Services, Inc., a company that designs and installs industrial propane-gas systems, testified that petitioner's installation plans not only met the applicable standard for industrial plants but also satisfied the stricter standard required for utility plants. James Travis, the safety health manager for Arkwright, Inc. (Arkwright), a textile facility also located in Cranston, stated that Arkwright obtained a permit for two 30,000–gallon propane tanks from the city of Cranston in 1989 and has experienced no problems with the tanks since their installation in 1990. Donna Keough, a manager for an insurance broker, testified that the fact that a residence was located near a plant with a propane tank on site would make "absolutely no difference" to the rating of a homeowner's insurance policy. Several area business owners, including the chairman of the board of the Cranston Chamber of Commerce, also testified in support of petitioner's application. In opposition to petitioner's application, the committee heard testimony from two residents and a representative of a citizens' group, Citizens Living Around a Safer Print Works (CLASP). Ron Schroeder, the spokesperson for CLASP, expressed particular concern about the risk of potential flood damage to the tanks, noting that, in addition to being within a flood plain, the proposed installation site was located downstream from an "antiquated and deteriorating" dam. A petition with 312 signatures was also presented in opposition to petitioner's application. At the conclusion of the hearing, the committee established an informal study group to consider CPW's application and to

make recommendations to the committee. The petitioner's application was tabled, and the meeting was adjourned. On January 3, 1994, the committee met again and decided that CPW's application would remain tabled "indefinitely." At that meeting, there was no discussion of the merits of the application and no recommendation from the study group. The petitioner subsequently filed a complaint in Superior Court, seeking a writ of mandamus to compel the committee to grant the permit, or, alternatively, to compel the committee to act on its application. On May 11, 1994, an order was issued directing the committee to rule on petitioner's application. On June 6, 1994, the committee met and petitioner's application was removed from the table. Following a brief discussion of concerns that the proposed installation was not "fail-safe," the new Cranston fire chief stated his opposition to petitioner's application, expressing particular concern over the site of the proposed installation. He opined that "putting hazardous materials in front of that dam is playing with people's lives." At the end of the meeting, the committee denied CPW permission to install the propane tanks. The committee did not make any determinations of fact or provide the reasons for its denial of the permit. The petitioner appealed the committee's decision to the city council on June 27, 1994. The appeal was denied at the council's next meeting on July 25, 1994. On August 10, 1994, CPW filed a petition for certiorari, which this Court granted on January 12, 1995. After hearing this case on the show-cause calendar, we assigned it to the regular calendar where the parties were directed to "provide evidence in their briefs of the designation by the state fire marshall [sic] of agents to whom authority has been delegated for the issuance of permits."

### Council's Denial of CPW's Application

■ "On certiorari this Court does not weigh the evidence but rather reviews the record in order to determine whether legally competent evidence supports the findings of the tribunal whose decision is under review." *Simpson v. Dytex Chemical Co.*, 667 A.2d 1229, 1231 (R.I.1995).

■ It is well settled that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." *Thorpe v. Zoning Board of Review of North Kingstown*, 492 A.2d 1236, 1236–37 (R.I.1985). In *May–Day Realty Corp. v. Board of Appeals of Pawtucket*, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970), this Court held that judicial review of a board's decision was impossible, unless the board had made factual determinations and applied appropriate legal principles in such a way that a judicial body might reasonably discern the manner in which the board had resolved evidentiary conflicts. In *Zammarelli v. Beattie*, 459 A.2d 951, 953 (R.I.1983), this Court held that "[u]nder no circumstances could the terse denial of petitioners' application, without findings of fact, application of legal principles, or indeed, any reasonably decipherable statement of the board's conclusion, meet the standards that we have previously laid down."

We have applied the same principle to municipal boards and councils acting in a quasi-judicial capacity, and held that a council decision is eligible for judicial review only when a record has been "compiled of the findings of fact and conclusions of law on which the * * * council based its action." *Eastern Scrap Services, Inc., v. Harty*, 115 R.I. 260, 263, 341 A.2d 718, 720 (1975). In *Sambo's of Rhode Island, Inc. v. McCanna*, 431 A.2d 1192, 1193 (R.I.1981), we concluded that council members "must do more than make a motion and take a vote" and the council's "determination must contain findings of fact which support the ultimate decision of the body." Further, in *Eastern Scrap Services, Inc.*, 115 R.I. at 263, 341 A.2d at 720, we held that because "the city council failed to make any findings of fact and to state the reasons for its denial of the petitioner's license application, we are unable to determine whether or not the council abused its discretion by acting arbitrarily, capriciously, or unreasonably."

Therefore, in light of our well-settled precedents, this Court is compelled to conclude that the council in this case failed to produce a record that would allow a determination

concerning whether its action was arbitrary or capricious. Consequently, "we will neither search the record for supporting evidence nor will we decide for ourselves what is proper in the circumstances." *Hooper v. Goldstein,* 104 R.I. 32, 44, 241 A.2d 809, 815 (1968). Instead, we remand this matter to the Cranston City Council with directions that the council make findings of fact and conclusions of law and submit such findings and conclusions to this Court within ninety days of the date of this opinion. The parties to this action may expand the record that we remand to the Cranston City Council. Thus, this Court defers action on the petition for certiorari but will retain jurisdiction during the ninety day period that the case is before the council.

MURRAY, J., not participating.