DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of Richmond ("the Board"). The plaintiff, Cecelia P. Richard ("Richard"), is appealing the Board's February 23, 1998 decision granting Churchill Banks's ("Churchill's")[1] petition for a special use permit to construct a gasoline station. Jurisdiction in this court is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
Churchill is the owner of Richmond Properties, LLC ("Richmond"). Richmond owns 10.35 acres of land located on Route 138 (Kingstown[2] Road) and Stilson Road, in Richmond, Rhode Island ("the property"). (1/26/98 Tr. at 46, 55). The property is designated as Assessor's Lot 62 on Plat 5B and is located in a general business zone. Id.
Richmond received site plan approval from the Planning Board to build a shopping center on the property. (1/26/98 Tr. at 23-4). The shopping center was to include a Stop Shop supermarket, a retail store, and a 100-seat restaurant. (1/26/98 Tr. at 4, 25); see also Application for Special Use Permit ("Application"). While Richmond was in the process of constructing the supermarket, it decided to change its original site plan. It resolved to cancel plans for the restaurant and build a gasoline station in its place. (1/26/98 Tr. at 25). Pursuant to section 18.16.010, "Permitted uses" of the Richmond zoning ordinance, which was in effect at the time of application, a gas station is permitted in a general business zone only by special use permit. Consequently, Richmond applied to the Board for a special use permit.
On January 26, 1998, the Board held an advertised, public hearing to consider Richmond's application. The original proposed gas station was to have four pumps with eight fueling stations and a canopy that would be ninety-six feet by twenty feet in size. (1/26/98 Tr. at 6); see also Application. A setback variance would have been required for this proposal. To avoid having to obtain a setback variance in addition to a special use permit, Richmond amended its application at the January 26, 1998 hearing. The amended application requested a special use permit to construct only three pumps with six fueling stations and a canopy of seventy-five feet by twenty feet in size. (1/26/98 Tr. at 5-6). Id. Richmond also submitted an amended site plan to the Board which was marked as Applicant's Exhibit 1. (1/26/98 Tr. at 6-7).
At the January 26 hearing, Richmond offered the testimonies of Michael Proctor ("Proctor"), the gasoline operations manager for the Stop Shop Supermarket Company; Raymond F. Cherenzia ("Cherenzia"), a licensed, professional engineer and licensed land surveyor in Rhode Island; Alexander Trakimas ("Trakimas"), a project manager with Tyree Engineering in Westborough, Massachusetts; Robert Grace ("Grace"), a real estate and planning consultant; Patrick Dunford ("Dunford"), a traffic engineer with Vanasse, Hangen Brustlin of Watertown, Massachusetts and a registered, professional engineer in Massachusetts; and Gerard McDonough ("McDonough"), a real estate consultant and commercial real estate appraiser in Rhode Island.
Proctor testified that Stop Shop's motivation in getting into the fueling business is to enhance the services it provides to its customers. (1/26/98 Tr. at 4). He explained the proposed site plan, including the dimensions of the fueling facility and its underground tanks. (1/26/98 Tr. at 4-5). Proctor further testified that Stop Shop operates three other similar facilities in Providence, Fall River, and New Bedford and reported that no accidents or problems have occurred at any of those sites. (1/26/98 Tr. at 7, 10).
Cherenzia, who was qualified as an expert by the Board, testified that he was familiar with the subject site and its surrounding neighborhood and that the site plans submitted in conjunction with Richmond's application were prepared under his direction. (1/26/98 Tr. at 13-4). Cherenzia explained that the subject property is in a commercial zone, surrounded by commercial property, and on an existing proposed commercial site. (1/26/98 Tr. at 14). According to Cherenzia, the site plan meets all ordinance requirements, including the proper number of parking spaces; it is not in the Aquifer Protection Overlay area; it is not located closer than 400 feet from a residential zoning district; and it does not require any special water or septic use, as the attendant will use the facilities in the Stop Shop store. (1/26/98 Tr. at 14-6). Cherenzia further testified, in his expert opinion as a civil engineer, that the proposed facility will be compatible with neighboring uses, will not create a nuisance or adversely affect the present character and future development of Richmond, is consistent with the Comprehensive Plan, and will be compatible with the orderly development of the town. (1/26/98 Tr. at 16).
At the completion of Cherenzia's testimony, Trakimas was also accepted as an expert by the Board. (1/26/98 Tr. at 26). Trakimas, whose firm designed the underground storage tank and dispensing system for Richmond's proposed gas station, discussed the numerous safety features built into the design. The safety features include double-walled pipes to contain any leaks, manual and electronic means of detecting leaks, and safeguards to prevent spills and reduce the amount of vapors escaping into the air when tankers come to fill the tanks. (1/26/98 Tr. at 28-35). Lastly, Trakimas presented the Board with an "Environmental Impact Statement" report which was prepared in connection with his testimony. (1/26/98 Tr. at 43-4).
Grace, Richmond's next witness, was accepted by the Board as an expert in the field of land planning. (1/26/98 Tr. at 44-5). Grace testified that the proposed gas station is a use which is consistent with the General Business Zoning District ("GB District") in which it would be located. He explained that a GB District is not only the most suitable, but actually the primary district for the location of gasoline service stations. (1/26/98 Tr. at 48). Grace determined that the proposed gas station is in compliance with the Comprehensive Plan. He explained that it will be developed in an area set aside for commercial development which is segregated from the rural, environmental, and residential areas of the town and is an economic development that will contribute to the town's tax base. In Grace's opinion, the gas station will not negatively impact the environment, public health, or safety, and it is compatible with the surrounding neighborhood, because it is within a major community shopping center and abuts numerous commercial businesses which front and service an arterial highway. (1/26/98 Tr. at 49-51).
Dunford, the traffic engineer, was also accepted by the Board as an expert. (1/26/98 Tr. at 55). Dunford indicated that he made an investigation of the traffic conditions and level of service around the subject property and its surrounding area and conducted a study and capacity analysis for both the existing conditions and future conditions with the proposed facility in place. Dunford testified that the project would cause no significant impact on either the traffic on the adjacent roadway system or on the parking field located in front of Stop Shop. (1/26/98 Tr. at 62). Dunford further testified that the proposed gas station would be compatible with neighboring uses and with the future development of the town and would not have any detrimental effects on the health or safety of pedestrians or motorists on the site or in the area. (1/26/98 Tr. at 63).
Richmond's last witness, McDonough, was accepted as an expert in the field of real estate appraisal. (1/26/98 Tr. at 82-3). McDonough opined that the subject property would not be in conflict with the particular uses in the immediate area and that it would actually enhance the property values in the area and their retail uses. (1/26/98 Tr. at 85).
The Board then invited the audience to speak in favor of or in opposition to Richmond's petition. Not one person spoke on behalf of or against the petition. (1/26/98 Tr. at 91). Thereafter, the Board closed the public hearing and voted to reserve decision until the next meeting. (1/26/98 Tr. at 91-2).
On February 23, the Board rendered its decision, approving by a unanimous vote, Richmond's application for a special use permit to construct the gas station. The Board found that the proposed gas station was in compliance with section 18.52.010(C), which permits the use upon the petitioner's meeting the requirements for a special exception. The Board determined that the proposed construction is compatible with neighboring uses, would not create a nuisance in the neighborhood, and would not hinder the future development of the Town of Richmond. (2/23/98 Tr. at 7-10); see also section 18.52.010(C), "Special use permits.".
Richard, DB Companies, Inc. d/b/a DB Mart ("DB Mart"), Cumberland Farms ("Cumberland"), and Independent Oil Marketers Association ("Independent Oil") filed an appeal to this court. The Board contested DB Mart's, Cumberland's, and Independent Oil's standing to bring the instant appeal and filed a motion to dismiss the complaint as to those parties. At a hearing held on May 29, 1998, a justice of the Superior Court granted Richmond's motion to dismiss Independent Oil from the subject matter, but denied Richmond's motion to dismiss both DB Mart and Cumberland.See Order entered 6/16/98. Subsequently, however, DB Mart and Cumberland filed a stipulation with the court dismissing their appeal with prejudice. See Stipulation entered 10/1/98. Accordingly, the only party remaining as a complainant on the appeal is Richard ("appellant").
 Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of the zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Special Use Permit
The Board's power to grant a special use permit emanates from § 45-24-57, which provides: "A zoning ordinance adopted pursuant to this chapter shall provide that the zoning board of review shall: (A) Have the following powers and duties: . . . (5) To authorize, upon application, in specific cases, special use permits, pursuant to § 45-24-42(A), where the zoning board of review is designated as a permit authority for special use permits; . . . ."
 Section 45-24-42 provides:
 "45-24-42. General provisions — Special use permits. — A zoning ordinance shall provide for the issuance of special use permits, which shall be approved by the zoning board of review. The ordinance shall:
 (1) Specify the uses requiring special use permits in each district;
 (2) Describe the conditions and procedures under which the special use permits, of each or the various categories of special use permits established in the zoning ordinance may be issued;
 (3) Establish criteria for the issuance of each category of special use permit, that shall be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town; . . ."
In accordance with § 45-24-42, the Town of Richmond enacted § 18.52.010(C) of the Richmond ordinance. Section 18.52.010(C) provides:
 "Sec. 18.52.010. Special use permits.
 C. A special use permit will be granted by the
 The zoning board may, in a specific case and after a public hearing, authorize a permit for a use identified in section III and elsewhere in this ordinance as a "special exception." Such proposed use must meet the following requirements:
 (A) It shall be compatible with neighboring uses.
 (B) It will not create a nuisance in the neighborhood.
 (C) It will not hinder the future development of the to. . . ."
In addition to the foregoing criteria, a gas station is permitted in a general business zone only if the proposed service station is not located within the Town's Aquifer Protection District and is not located any closer than 400 feet from a Residential Zoning District. See Richmond Ordinance section 18.16.010, p. 144-1.,see also (1/26/98 Tr. at 87).
When a legislative body leaves the determination of whether or not a use should be authorized by the zoning board of review by special exception, "it is a condition precedent to the exercise of the board's jurisdiction that a grant of the use sought must be found by said board as not inimical to the public health, safety, morals and welfare." Id. at 254 (citing Nani v.Zoning Board of Review of the Town of Smithfield, 242 A.2d 403, 406 (R.I. 1968)).
 Findings of Fact on the Record
Richard attacks the Board's decision based upon two alleged procedural deficiencies. First, Richard argues that the Board's decision is in violation of the statutory and ordinance provisions because it does not set forth findings of fact upon which it was based.
It is well-settled that a zoning board of review is required to "make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." C.P.W. v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996) (citing Thorpe v. Zoning Board of Review of NorthKingstown, 492 A.2d 1236, 1236-7 (R.I. 1985)). Zoning boards that fail to comply with such obligations run the risk of reversal if the court is unable to find sufficient grounds for the decision.Hopf v. Board of Review of the City of Newport, 120 R.I. 275, 288, 230 A.2d 420, 428 (1967).
In the instant case, the Board has clearly set forth its findings of fact in its decision supporting its grant of the special use permit. It specifically found that the gas station will be compatible with neighboring uses because the area is zoned for general business and there are other gas stations and commercial ventures in the area; it is consistent with the Comprehensive Plan which encourages clustering of similar activities and uses; it is compatible with the orderly development of the Town, because it is located away from residential areas; and it is environmentally compatible, because it is not located within the Aquifer District, and Richmond has met all the requirements concerning gas spills and drainage. (2/23/98 Tr. at 7-9). Additionally, the record reveals that Richmond presented substantial, uncontradicted expert witness testimony that clearly supports the Board's findings of fact and conclusions of law.
 Advisory Opinion from the Planning Board
Richard additionally argues that the Board failed to obtain an advisory opinion from the Planning Board prior to acting on Richmond's application for a special use permit. Plaintiffs' Memorandum of Law at 4, 6 Richard's reliance on Falsey v. TheZoning Board of Review of the Town of Narragansett, WC 94-0243, May 5, 1995, Famiglietti, J., is misplaced. Falsey, a Superior Court decision, was decided pursuant to a Narragansett ordinance. The relevant ordinance mandated that after any application for a special use permit was filed, the Zoning Enforcement Agency was required to transmit the application to the Planning Board for site plan review. In return, the Planning Board was required to issue a written report to the Zoning Board containing its evaluations. See Narragansett ordinance, sections 18.1 and 18.5. In Falsey, the Board made a decision on an amended application without first referring it back to the Planning Board. The Superior Court found that pursuant to the specific, Narragansett ordinance provision, the Board lacked the requisite written report to properly make a decision and remanded the matter back to the Board for its violation of ordinance procedure. Falsey
Tr., p. 6 lines 4-12; 22-25; p. 7 line 10 through p. 8 line 14.
The Richmond ordinance has a similar provision that addresses referrals to the Planning Board. See section 18.52.010. Section 18.52.010 provides:
 "18.52.010 Special use permits. A. An application for a special use permit may be made by any person, group, agency or corporation by filing with the zoning enforcement officer, an application describing the request and supported by such data and evidence as may be required by the zoning board of review, which shall have the power to hear and decide special use permits according to the terms of this title.
 B. The zoning board of review may refer the application to the town planner and/or the planning board which shall report findings and recommendations, including a statement that the special use is either consistent with, or inconsistent with, the purposes contained in the comprehensive plan. Such findings and recommendations shall be reported to the zoning board of review within thirty days." (Emphases added.)
However, unlike the Narragansett ordinance provision, section 18.52.010 clearly affords the Richmond Board discretion as to whether it will refer a special use permit application to the Planning Board — "The zoning board may refer the application." The only mandatory language in that section deals with the Planning Board's obligation once an application is referred to it. In the event the Board refers an application, the Planning Board shall report its findings and recommendations back to the Board within 30 days.
Section 18.52.010 essentially mirrors R.I.G.L. § 45-24-49. R.I.G.L. § 45-24-49 provides:
 "45-24-49. Special provisions — Development plan review. —
(A) A zoning ordinance may permit the review of applications for uses requiring a special-use permit, a variance, a zoning ordinance amendment, and/or a zoning map change. The review shall be based on specific and objective guidelines, but shall be advisory only to the permitting authority unless otherwise provided by the ordinance . . ." (Emphases added.)
Pursuant to § 45-24-49, Richmond ordinance section 18.54.010(D) provides Planning Board review to be advisory to the permitting authority.
Relying on section 18.54.010, Richard contends that the procedure of first referring applications to the Planning Board is mandatory. Section 18.54.010 provides:
 "Purpose — When required. A. Development plan review is required for all permitted uses other than one- or two-family dwellings or accessory buildings.
 B. No building permit may be issued for any building within the purview of this chapter except in conformance with an approved development plan review. . .
 D. Development plan review approval by the planning board:
 1. For the erection, enlargement or change of use of any building or other structure other than one- or two-family dwellings and their accessory uses, or uses requiring a special use permit, a variance, a zoning ordinance amendment, and/or a zoning map change may be required by the zoning board of review or the town council. The review conducted by the planning board shall be advisory to the permitting authority;" (Emphasis added.)
Section 18.54.010, which pertains to development plan review, is addressed to the issuance of the building permit. Section B of 18.54.010 specifically provides: "No building permit may be issued for any building within the purview of this chapter except in conformance with an approved development plan review." The Town of Richmond Zoning Board of Review Application for a special permit does require a site plan for a proposed use but does not require planning board approval, in marked contrast, for example, to "ISDS Approval," which is clearly required on said application. As pursuant to Section 18.60.050 of the Richmond ordinance, the application procedures for requests for a special use permit ". . . shall be those adopted and presented on the town application guidelines and procedures," the applicant is not required to obtain planning board approval for his application before appearing before the zoning board.
The record demonstrates that Richmond fully recognizes that it must refer its amended site plan to the Planning Board before it receives a permit to build the gas station, and it appears from the record that it will do so as soon as the special use permit is granted by the Zoning Board:
 "Mr. Ornstein: Madam Chairman, I'd like to request that we send the traffic study to the Town Planner and have him verify that in fact the proposed use will not change the original intended traffic flow coming out of the proposed parcels as was approved by the Planning Board.
 Ms. Angell: Any other requests? Anything you'd like to say?
 Mr. Moses: If I may, we have to go to Planning Board approval, and I've already had the opportunity to discuss with Mr. Lombardo and they will be evaluating traffic as part of the elements that need to be discussed with them. I just wanted to bring that to your attention. We're only asking today for a Special Use Permit. It is subject for plan review by the Planning Board.
 Mr. Ornstein: If it's subject to the Planning Board —
 Ms. Angell: So what are you asking me, you'd like to wait to hear from the decision from the Planning Board?
 Mr. Ornstein: No. I mean, I don't know which comes first, actually.
 Ms. Mowchan: We do.
 Ms. Angell: We do.
 Mr. Moses: Yeah, absolutely. This is a use issue, and then the Planning Board will deal with the actual — we can not even go to the Planning Board unless we get a Special Use Permit from the Zoning Board. This is very different than most things that you deal with. The way this ordinance is drafted, there are specific standards that we have to prove.
 Ms. Mowchan: It can't go before planning until they get the zoning for special use."
(1/26/98 Tr. at 89-90).
Although Richmond must refer its amended site plan back to the Planning Board before it begins construction on its gas station, there is no ordinance provision that mandates that it do so before applying to the zoning board for a special use permit. Accordingly, this court finds that the Board did not act in excess of its authority or in violation of ordinance or statutory procedure, as it was not required under any provision of the Richmond ordinance or its Enabling Statute to refer the application to the Planning Board prior to making its decision.
After a review of the entire record, this court finds that the Board's decision is supported by the reliable, probative, and substantial evidence contained in the record and was not made upon unlawful procedure. Substantial rights of the petitioner have not been prejudiced. Accordingly, the Board's February 23, 1998 decision is affirmed.
After proper notice, counsel shall submit the appropriate judgment for entry.
[1] Although only Churchill is listed as the "Applicant" on the application to the Board for the special use permit, Richmond Properties, LLC is also regarded as the applicant throughout the January 26, 1998 and February 23, 1998 hearings before the Board. For the purposes of this decision, both Richmond and Churchill will be deemed to be applicants.
[2] The January 26, 1998 transcript at p. 46 refers to "Kingston" Road. The correct spelling is "Kingstown".