[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
In this administrative appeal, appellant Gerald Zavota (the "appellant") challenges a March 21, 2002, decision by the Zoning Board of Review of the Town of Barrington (the "Board") that denied his application for dimensional variances. In that application, appellant Zavota sought dimensional variances from the front yard and rear yard setback requirements of the Barrington Zoning Ordinance (the "Ordinance") to enable him to build a single-family residence on a substandard lot of record.
For the reasons set forth in this decision, this Court remands this case back to the Board for reconsideration in light of this opinion and instructs the Board, following reconsideration, to make a stenographic transcript or audiotape recording and written record of its findings of fact and conclusions of law with regard to appellant Zavota's application for dimensional relief. Such factual findings and legal conclusions, which were absent from the Board's decision of March 21, 2002, are necessary predicates to any further review of the Board's decision by this Court.
 Facts/Travel
The property at issue in this appeal is an undeveloped substandard lot of record located in an R-10 Zone on the corner of Magnolia Lane and Western Avenue in Barrington, Rhode Island and referenced on the Barrington Zoning Map as Assessor's Plat 14, Lot 11A (the "Property"). The Property is located in a residential neighborhood that consists primarily of small ranch homes that were built on slabs on 10,000 square foot lots in the 1950's. Many of the nearby residents have converted their garages into living space to increase the overall square footage of their homes, leaving them without garage or storage space. Measuring only 6,200 square feet, the Property is substantially smaller than these neighboring residential lots. It fronts on Magnolia Lane and backs up to conservation land, with Western Avenue to one side and another residential lot to the other side.
It appears that appellant Zavota first applied for dimensional variances from the front yard and rear yard setback (and lot coverage) requirements for this Property around January 2002. At that time, he apparently sought to build a single-family raised ranch home on the Property with a footprint measuring 44 feet wide and 26 feet deep and with a rear yard setback of 5 feet and an angular front yard setback, though undefined, of something less than 20 feet. Appellant Zavota needed dimensional variances because, in a residential R-10 Zone, § 185-17 of the Ordinance requires a rear yard setback of at least 20 feet and a front yard set back of at least 25 feet.
The Board denied his initial request for dimensional variances, ostensibly finding that the relief sought was not the least relief necessary, as is required for the granting of a dimensional variance under the Ordinance. It apparently had concerns about the rear yard setback (whereby the residence would be sited only 5 feet from conservation land), the size of the proposed house (i.e., were the dimensional variances requested for it the least relief necessary) and the absence of a floor plan for the proposed structure. The record of that proceeding does not comprise a part of the administrative record on appeal to this Court nor did the Board have appellant's first application or its decision regarding that application before it (as it should have) when it considered his second application for dimensional variances that is at issue in this appeal.
After the denial of his initial application for dimensional variances, appellant Zavota redesigned the plans for his proposed residence to address some of the Board's apparent concerns with that application. He again proposed construction of a raised ranch, but he increased the rear yard setback from 5 feet to 9 feet and decreased the depth of the residence from 26 feet to 24 feet (or 22 feet with 2 feet of overhang on the second floor only). The precise front yard setback is not specified in the application but appears to range from approximately 12-15 feet, on an angle, from the overhang. The revised application also included a new front yard retaining wall to minimize the height of the proposed structure. A garage would be located under the house to provide for indoor storage. All of the dimensions except for the front yard and rear yard setbacks met the requirements of the Ordinance for building in a residential R-10 Zone. Lot coverage of 19% associated with the revised plan also met the requirements of the Ordinance. This application received the approval of the Conservation Commission, subject to the installation of boundary markers to prevent encroachment onto the Town's conservation land to the rear of the Property.
The Board ordinarily will not accept another application for a dimensional variance (or special use permit) with respect to the same property for a period of one year after denial of an application. The period of time may be waived, however, if the applicant submits an affidavit with the subsequent application, in accordance with § 185-65 of the Ordinance, that demonstrates, to the satisfaction of the Board, that the new application shows a substantial change in factual circumstances from the earlier application.
On March 21, 2002, the Board considered appellant Zavota's second application for dimensional variances for the Property. Apparently influenced by the increase in the rear yard setback, the decrease in the structure's overall depth and the applicant's submission of floor and site plans, the Board found that the second application reflected a substantial change from the first application. It thus granted appellant Zavota an immediate hearing with respect to his second application. The Board's finding of a substantial change and its decision to grant a hearing on the renewed application are not issues on appeal before this Court.
At the hearing on the second application on March 21, 2002, appellant Zavota testified regarding his application. He described the floor plan as consisting of a kitchen, combined living room and dining room area, three small bedrooms and a bath upstairs and a garage and storage area underneath the house. (Tr. at 18-19; exhibits). He described that the purpose of the retaining wall in front of the structure would be to make the house look as close to a single-story ranch house as possible. (Tr. at 19). He explained that his house would not be too close to any other homes, notwithstanding the small lot size and diminished front yard and rear yard setbacks proposed, because it would be buffered by the roads in front and to one side, the conservation land in the rear and a large setback on the remaining side. (Tr. at 30-31).
Through counsel, appellant Zavota presented the expert testimony of a real estate agent, Mr. Butterfield. In response to questioning from the Board, the expert testified that it would not be "practical" or "reasonable" to put a smaller house on the lot, its square footage would be "consistent with other homes in the neighborhood" and that such limited "amount of square footage is minimal in housing today." (Tr. at 27-28). Referring to the kitchen, bathroom, three bedrooms and a living room, the expert stated that "you really could not make any of those areas much smaller than they are here." Id. He acknowledged the nearness of the house to the street and its shorter front yard and rear yard setbacks than other houses in the neighborhood (most of which had front yard set backs of 25 feet and rear yard set backs of at least 35 feet, in conformance with the Ordinance). He explained that such discrepancy resulted, of necessity, from the fact that the Property is almost half the total size of the other lots. While also acknowledging that most of the other houses had dimensions of 24 feet by 35 feet (as compared with his proposed dimensions of 24 feet (at least with the overhang) by 44 feet, he explained that the other residences also had garages that had been converted to living space that should be added to the overall house dimensions. (Tr. at 31-32). Yet, he acknowledged that, based on the dimensions of the other homes, a smaller house than the one proposed by appellant Zavota "at least at some point was buildable." (Tr. At 31). He also admitted that the homes in the immediate vicinity in the neighborhood were all single story homes. Id.
Several neighbors testified in opposition to appellant Zavota's request for dimensional variances. They expressed concerns about the two-story nature of the proposed house and the inefficacy of the retaining wall as a proposed solution to that problem. They did not argue that a smaller house should be built on the lot, nor did they question the proposed footprint of the residence. They simply wished to see no house at all built on the Property.
At the conclusion of the hearing, the Chairman of the Board indicated that the Board would vote on appellant Zavota's application at the conclusion of the night after all matters on the agenda were heard. The Board ultimately voted that night, 4 to 1, to deny the requested dimensional variances. The Board filed written Minutes of the Meeting, containing a summary of the proceeding and the Board's Discussion and Reasons for Decision, on March 29, 2002.
Appellant Zavota filed a timely appeal with the Superior Court from the March 21, 2002, decision of the Board. The Board did not thereafter file with the Court the entire certified record of the zoning board proceeding, as required by law. It filed a copy of the application, exhibits and Minutes of the Meeting. It did not file the audiotape recording of the hearing or any stenographic transcript of that proceeding with the Court. Neither party brought this deficiency in the record to the attention of the Court prior to the matter being assigned for decision. Ultimately, at the request of this Court, the parties later filed with the Court copies of the audiotape recordings of the Board hearing underlying this appeal and an unofficial stenographic transcript of the taped proceedings. Unfortunately, neither the audiotape recordings nor the stenographic transcript contains a record of the Board's discussion of appellant Zavota's application for dimensional relief or any of its findings of fact or conclusions of law supporting the denial of that application. The Board only recorded and transcribed the evidentiary hearing and its actual vote. Only the Minutes of the Meeting (the "Minutes") speak to the Board's rationale for its decision. In addition, while the first application for dimensional relief filed by appellant Zavota was considered by the Board, in general terms, in reviewing his subsequent similar application for dimensional variances, and is relevant to this appeal, neither party submitted the record of that proceeding to the Board or to this Court.
On appeal, appellant Zavota argues that he is entitled to the relief that he requested below because the Board made no factual findings or legal conclusions in support of its decision. Appellant Zavota asserts that the Board abused its discretion in rendering its decision, in violation of R.I. Gen. Laws §45-24-69(d)(6).
 Standard of Review
Under Rhode Island law, this Court possesses appellate review jurisdiction of a decision of a zoning board of review. R.I. Gen Laws § 45-24-69(d)(6). The subject statute provides:
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the applicant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 Review of the Board's Decision
The Rhode Island Zoning Enabling Act of 1991 provides, in pertinent part, as follows:
 Following a public hearing, the zoning board of review shall render a decision within a reasonable period of time. The zoning board of review shall include in its decision all findings of fact and conditions, showing the vote of each participating member, and the absence of a member or his or her failure to vote. Decisions shall be recorded and filed in the office of the city or town clerk within (30) working days from the date when the decision was rendered, and is a public record. The zoning board of review shall keep written minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating that fact, and shall keep records of its
examinations, findings of fact, and other official actions, all of which shall be recorded and filed in the office of the zoning board of review in an expeditious manner upon completion of the proceeding. For any proceeding in which the right of appeal lies to the superior or supreme court, the zoning board of review shall have the minutes taken by either a competent stenographer or recorded by a sound recording device.
R.I. Gen. Laws § 45-24-61 (a) (1991) (Emphasis added). "[B]y its express terms, the Act requires a zoning board to make a stenographic or audiotape recording of any zoning board hearing. . . . [and] to include in its decision all of its findings of facts." Ryden v. Barrington Zoning Bd. of Review,
PC/1996-1800 2002 WL 1804542 at. *12 (R.I. Super. August 5, 2002).
As our Supreme Court reiterated recently, "municipal . . . boards acting in their quasi-judicial capacity must make findings of fact and conclusions of law to support their decisions."Cullen v. Town Council of the Town of Lincoln, M.P. No. 2001-212 (April 12, 2004) (citations omitted). Such boards should "make express findings of fact and should pinpoint the specific evidence upon which they base their decision . . . because the parties and this court are entitled to know the reasons for the board's decision." Hopf v. Board of Review of the City ofNewport, 230 A.2d 420, 428 (R.I. 1967). Decisions are not susceptible to judicial review "unless the board ha[s] made factual determinations and applied appropriate legal principles in such a way that a judicial body might reasonably discern the manner in which the board has resolved evidentiary conflicts."Cranston Print Works Co. v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996). If the zoning board "fails to disclose the basic findings upon which its ultimate findings are premised, [this Court] will neither search the record for supporting evidence nor will [it] decide for [itself] what is proper in the circumstances." Hooper v. Goldstein, 241 A.2d 809 (R.I. 1968). As stated by the Supreme Court.
 [W]e must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible.
von Bernuth v. Zoning Board of the Town of New Shoreham,770 A.2d 396 (R.I. 2001) (quoting May-Day Realty Corp., v. PawtucketAppeals Board, 267 A.2d 400,403 (R.I. 1970) (citations omitted)); see also Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001) (holding that zoning board decisions on variance applications must address evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief).
Unfortunately, the record submitted to this Court in connection with the instant appeal is woefully deficient and thwarts the ability of this Court to exercise its essential review function. An audiotape recording of the March 21, 2002, hearing exists, but it does not contain a record of the entire hearing. At some point after the Board conducted the evidentiary hearing on the applicant's request for dimensional variances, but before the Board voted on that application, it appears that the tape recorder was turned off or otherwise failed to record the Board's discussion regarding the application. No audiotape recording or stenographic transcript exists of that discussion or the Board's findings of fact and conclusions of law (if any). While the tape recordings submitted on appeal include a recording of the Board's actual vote, the substantive discussion by the Board and the reasoning behind the majority vote to deny the application is absent on those tapes. As a result, the tape recordings are nearly useless because "it is well settled that a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible to judicial review." Cranston Print Works v. Cityof Cranston, 684 A.2d 689, 691 (R.I. 1996). The audiotape recording includes neither the findings of fact nor conclusions of law in support of the Board's decision and, consequently, the decision is not susceptible to judicial review based on the audiotape recordings presented.
The deficiencies in the audiotape recordings demand that this Court look elsewhere in the record to determine whether the Board made the requisite factual findings and legal conclusions to allow this Court to review its decision. The Minutes of the Meeting (the "Minutes"), which the Board filed over a week following the hearing, are the only other record of the hearing submitted to this Court on appeal. The Minutes contain a section entitled "Discussion" and a section entitled "Reasons for Decision" that purport to summarize the Board's discussion of appellant Zavota's application and its stated reasons for its denial of that application that ostensibly occurred later in the night after the evidentiary hearing, but before the Board voted on the application. These two sections of the Minutes are not reflected on the audiotapes.
Unfortunately, like the audiotapes, the Minutes fail to contain adequate findings of fact and conclusions of law essential to this Court's review. The "Reasons for Decision," stated within the Minutes, state as follows:
 It was the judgment of the Board that the standards in § 185-69 have not been met: A) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area, and is not due to an economic disability of the applicant; B) that the hardship is not the result of any prior action of the applicant and does not primarily result from the desire of the applicant to realize greater financial gain; C) that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive Plan; D) that the relief granted is not the least relief necessary. Additionally, the standards for a dimensional variance set forth in § 185-71 have been met because the applicant has proved that the hardship to be suffered by the owner, absent granting the relief, would amount to more than a mere convenience.
This paragraph actually contains a verbatim recital of provisions of § 185-69 of the Ordinance. It is nothing more than the "recital of a litany" that the Supreme Court first condemned over three decades ago in May-Day Realty. Obviously a mere recitation of the portions of the Ordinance establishing the standards for the Board's granting of dimensional relief does not provide this Court with any insight into how the Board applied those standards to appellant Zavota's application or reached its decision to deny the appellant relief. The Board's stated rationale does not contain any factual findings or describe the evidence that the Board relied upon or rejected in reaching its conclusions. The "Reasons for Decision," therefore, really contain no reasons at all and deprive this Court of any meaningful opportunity to review the Board's decision.
Likewise, the section of the Minutes entitled "Discussion" that purports to summarize the Board members' statements regarding appellant Zavota's application for dimensional variances just prior to voting to deny his application does not provide this Court with the information that it needs to review that decision. At best, this section of the Minutes is a summary of the Board's discussions that this Court cannot compare to the verbatim record of those discussions because that part of the record of the hearing is missing from the audiotapes. Absent that record, this Court has no way to determine whether the summary of the Board's discussions contained in the Minutes are accurate and complete.
Moreover, even assuming that the "Discussion" section of the Minutes fully embodies the Board members' statements regarding the application, it does not square with the Board's "Reasons for Decision" contained in the Minutes. The Board found, in its "Reasons for Decision," that appellant Zavota failed to satisfy the standard set forth in subparagraph (A) of § 185-69 of the Ordinance, namely that "the hardship from which [he sought] relief was due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area, and is not due to an economic disability of the applicant." The Board found further in its "Reasons for Decision" that appellant Zavota failed to satisfy the standard set forth in subparagraph (B) of § 185-69 of the Ordinance, namely that "the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain."
Yet, there is nothing in the Board's discussion or in the evidentiary record to indicate that the applicant failed to satisfy either of these standards for obtaining dimensional relief or that any Board member made such a finding. To the contrary, the record suggests that the unique characteristics of the land, rather than any of the applicant's prior actions or his economic desires, created the applicant's hardship and his need for the requested dimensional variances. As the Board itself recognized, the Property is a buildable, substandard lot of record on which no residence can be built unless the owner is granted dimensional relief.
While there are some statements by Board members in the "Discussion" section of the Minutes that, if true and complete, could lend some support to the additional conclusions of the Board stated in its "Reasons for Decision," there is no evidence that those statements were adopted by a majority of the Board members as the Board's findings of fact and conclusions of law. Although the Board concluded in its "Reasons for Decision" that appellant Zavota failed to satisfy the standard set forth in subparagraph (C) of § 185-69 of the Ordinance (namely that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan), there is only one statement of one Board member in the "Discussion" section of the Minutes that explicitly references that standard. Neither that statement nor the statements of other Board members that could relate to this standard explain what portion or portions of the standard are not satisfied, why the standard is not satisfied, what evidence supports that conclusion and the basis upon which expert testimony to the contrary was rejected.
Similarly, although the Board concluded in its "Reasons for Decision" that appellant Zavota failed to satisfy the standard set forth in subparagraph (D) of § 185-69 of the Ordinance (namely that the relief to be granted is not the least relief necessary), there is only one statement of one Board member in the "Discussion" section of the Minutes that explicitly references that standard. Neither that statement nor the statements of other Board members that could relate to this standard explain why the standard is not satisfied, what evidence supports that conclusion and the basis upon which expert testimony to the contrary was rejected.
The Board's failure to explain its view of the expert testimony, make factual findings from the evidence presented at the hearing and evidence a proper application of the relevant legal standards is particularly troublesome in light of the nature of the Property and the application for dimensional variances submitted to it for decision. As recognized by the Board, the Property, though a substandard lot of record, is a buildable lot upon which the Board does not have the legal right to deny the applicant a right to build (absent a taking of the Property with just compensation). See § 185-25 of the Ordinance. In addition, as noted by legal counsel to the Board at the hearing, there is no building envelope for this Property — meaning that the front yard and rear yard setbacks required by the Ordinance, if enforced, would preclude the construction of any residence. As such, a house cannot be built on the Property, absent dimensional relief. Dimensional relief, if appropriate under the standards of the Ordinance, must be granted to the applicant to allow him to build or he must otherwise be compensated justly for the taking of his Property.
In addition, as further recognized by several members of the Board, the applicant does not need a height variance. The proposed height of the residence, therefore, is not an issue for the Board. Instead, the Board's focus must be on the applicant's request for dimensional relief and the proposed footprint of the house. In that regard, it should be noted that an increase in height may result in a decrease in the size of the footprint.
Under these circumstances, it is not sufficient for the Board members to deny appellant Zavota's application for dimensional variances by simply stating their generalized, varying views, as they did in the "Discussion" section of the Minutes, that his proposed residence is either too big for the lot, too big for the neighborhood or the wrong type of house. These statements are ambiguous and could reflect an improper consideration of the height of the proposed residence, an unprincipled rejection of the expert opinion testimony presented at the hearing, statements based on clearly erroneous facts, or an improper application of the variance standards to the facts found as a result of the hearing. This Court must be satisfied that the Board is not denying the applicant relief simply to ensure that no house is ever built on the Property, as some of the objectors desired, as that would be tantamount to a taking of the Property without just compensation.
The Court's concern in this regard is even more profound given the history of the applicant's requests for dimensional variances. At the outset of the hearing, the Board determined that appellant Zavota had made a substantial change to his prior application for dimensional variances. This finding by the Board was not challenged in this appeal. As such, it appears that the applicant already attempted, on at least one occasion, to address the Board's concern that the footprint for his proposed residence was too large and its concern as to the sitting of the proposed residence. In determining that his second application presented changes substantial enough to warrant consideration of a second application for dimensional variances for the Property within two months of its initial denial, the Board implicitly decided, at least in part, that the applicant had made a substantial reduction in the size of the footprint and relocated the house to address its earlier objections. Yet, in denying him dimensional relief, it also suggested that the footprint was still too large.
An applicant in these circumstances should not be required to guess as to the size or location of the footprint that the Board will deem acceptable. Otherwise, an applicant could be faced with the prospect of returning to the Board again and again with modifications to the size and location of the footprint of the proposed residence until it either reached a size and location that the Board found acceptable or the Board voted implicitly or explicitly to deny the applicant the right to build by denying the applicant any dimensional relief.
There is a fine line between properly denying dimensional relief in accordance with the standards set forth in the Ordinance and improperly denying relief to prevent any building on the pretext that the applicant has not met the standards of the Ordinance. The only way that a reviewing court can discern on which side of the line the Board's decision to deny dimensional relief falls is if the Board makes appropriate findings of fact, based on the evidence presented at the hearing, articulates its rationale for accepting or rejecting any expert or lay testimony presented, and applies the standards for the granting of dimensional variances to those facts to state with specificity its rationale for its decision.
As the Board in this case failed to make the necessary factual findings and conclusions of law and failed to properly record its decision making process, this Court has no choice but to remand this case to the Board for reconsideration in light of this decision. Upon remand, the Board is instructed to reconsider the expert opinion testimony and other evidence presented at the hearing on March 21, 2002, state its findings of fact based on that evidence presented, and further state, with specificity, its legal conclusions after applying the standards for granting dimensional relief to the facts as it finds them to be. The vote of each member of the Board as to each factual finding and legal conclusion stated must be recorded, as a majority of votes as to each of those matters is required for it to be a finding or conclusion of the Board. In reconsidering appellant Zavota's application, the Board will be bound by its prior determination, as supported by the evidence adduced at the hearing, that the applicant has demonstrated a hardship amounting to more than a mere inconvenience should his requested relief not be granted, as is required by § 185-71 of the Ordinance.
The Board may decide, upon review of the record in light of this Court's decision, that it is constrained to grant appellant Zavota's request for dimensional relief. If it determines to once again deny the requested relief, it must clearly articulate the basis upon which it has decided to reject the expert testimony that the applicant presented, the evidence that it relies upon to support its decision and the reasons that it determines that the applicant has failed to meet the criteria for the granting of dimensional relief. It further must indicate the size of the footprint of a proposed dwelling and its location on the Property, if any, for which it would grant dimensional relief and the evidence it relies upon and detailed rationale for its conclusion in that regard.
 Conclusion
This matter is remanded to the Barrington Zoning Board for immediate reconsideration of appellant Zavota's application for dimensional variances in light of this Court's decision. The Board is instructed to make an audiotape recording or stenographic transcript and a written record of all of its proceedings upon remand, inclusive of the detailed findings of fact and conclusions of law specified in this decision. This Court will retain jurisdiction of this case should any party file a timely appeal from the Board's decision following remand
Counsel shall confer and submit to the Court forthwith for entry an agreed upon form of Order and Judgment consistent with this Decision.