DECISION
In this administrative appeal, appellants Ernest B. Ryden and Lois B. Ryden ("Ryden") challenge a decision of the Zoning Board of Review of the Town of Barrington ("Board") that denied Ernest Ryden's application for zoning relief. For the reasons set forth in this decision, this Court remands this case to the Board for rehearing so that it can make a stenographic transcript or audiotape recording of the hearing and make the findings of fact and conclusions of law that are necessary predicates to this Court's judicial review of the Board's decision.
 Facts/Travel
Appellant Ernest Ryden is the record owner of a parcel of land that is located at 10 Arvin Avenue in the Town of Barrington and is designated as Assessor's Plat 32, Lot 237 (the "Property"). The Property consists of undeveloped land that is located in a residential 10 (R-10) zone.[1]
The Property is a corner lot and constitutes an area of approximately 11,067 square feet. The Property has a frontage of 104.6 feet on Arvin Avenue, 100 feet on Nahma Avenue, 117.18 feet abutting lot 513 and 100 feet abutting lot 238.
This appeal concerns appellant Ryden's unsuccessful attempt to secure approval from the Barrington Zoning Board to build a single-family residence on the Property. As he successfully obtained zoning relief and other permitting for the Property in the past, under earlier zoning ordinances, it is important to view appellant Ryden's most recent application, and the Board's decision with respect to it, in historical perspective.
According to appellant Ryden, his parents originally purchased the Property with the intention of later building a retirement residence on the land. On December 31, 1970, they transferred the Property to appellants Ernest and Lois Ryden. See Letter dated February 10, 1996 from Appellant Ryden to Board. Appellant Ryden states that his parents made this transfer so that he could build them a retirement home on the Property that would be deeded to him upon their death. Id.
In 1971, appellant Ryden filed an application with the Board by which he sought a dimensional variance in connection with his proposed construction of a residence on the Property. See Notice of August 19, 1971 Board Hearing. The administrative record filed in connection with this appeal contains no copy of that application. Before the Board heard that application, it appears that appellant Ryden received support for that proposed construction from Thomas J. Wright, Chief of the Division of Fish and Wildlife. See Letter dated June 10, 1971 from Waterman Engineering Company to Thomas J. Wright; Memorandum dated January 9, 1970 from J.C. Reynolds, Conservation Biologist, to T.J. Wright, Chief Conservationist. He assented to the recommendation of Waterman Engineering Company, which had been retained by appellant Ryden to install a sub-surface sewage disposal system with septic tank and sewage field and to fill and slope the Property in a manner that would not unduly disturb and would help protect the marshland on the Property. Id. On August 19, 1971, the Board approved appellant Ryden's application to erect a dwelling on the Property with less than the required setback.See Notice dated August 17, 1971 from Board to Appellant Ryden. The administrative record before this Court does not contain the record of the hearing on that application. On September 21, 1971, appellant Ryden secured approval from the Rhode Island Department of Health to install an individual sewage disposal system ("ISDS") on the Property. See
Application for Approval of ISDS dated September 21, 1971 and Plan of Proposed Sewage Disposal System. This application was in accordance with the engineering plan submitted that identified the location and dimensions of the septic tank, drainage bed and proposed three bedroom dwelling. Id.
On February 23, 1972, the Building Inspector granted appellant Ryden a building permit. See Building Permit dated February 23, 1972. It granted appellant Ryden permission to erect a framed residence, in accordance with his application, measuring 24 feet by 52 feet, plus a deck and carport, at an estimated cost of $15,000. Id. The permit indicated that it would expire within six months of its date of issuance. Id.
According to appellant Ryden, his parents decided not to retire at that time. See Letter dated February 10, 1996 to Board from Appellant Ryden. As a result, he claims he did not build in accordance with the zoning permission and building permit that he had been granted. Id.
Appellant Ryden then states that his father again decided to retire in 1977, causing appellant Ryden to seek approvals to build a residence once again. Id. According to the documents in the administrative hearing record, however, it actually was in 1976 that he sought additional approvals.
In March or April 1996, appellant Ryden filed a second ISDS permit application for the Property. See ISDS Application dated March 30, 1976 and April 17, 1976. The administrative record filed with this appeal discloses no plan filed with those applications. On April 29, 1976, the Department of Health granted appellant Ryden conditional approval of his ISDS permit application dated April 17, 1976 "subject to suspension and revocation in the event that subsequent examination reveals any of the data indicated on any form, submittal or sketch are incorrect or not in compliance." See Application for ISDS Permit dated April 7, 1976.
On June 24, 1976, the Zoning Board heard appellant Ryden's application for permission to erect a frame dwelling on the Property with less than the required side and rear yards. See Notice of Hearing for June 24, 1976 Hearing. The administrative record filed with this Court does not contain a copy of this application or the hearing record. On June 25, 1976, the Board sent appellant Ryden written notice of its approval of his zoning application, but made that approval subject to the approval of the Coastal Resources Management Council ("CRMC"). See Letter to Appellant Ryden from Board dated June 25, 1976. The notice indicated that if CRMC granted approval, appellant Ryden could obtain a permit from the Building Inspector, that the zoning approval would expire within six (6) months after approval by CRMC, and that the CRMC hearing was scheduled for July 9, 1996. Id.
On June 28, 1976, the Barrington Conversation Commission notified the Barrington Town Council President of its opposition to appellant Ryden's CRMC application on the grounds that the proposed construction could alter the existing salt marsh and allow for seepage from the individual sewage system into the surrounding wetlands and the Barrington River.See Letter dated June 28, 1976 to James Mullen, Town Council President, from Ronald Millard of the Conservation Commission. The Conservation Commission recommended that a percolation dye test be performed to determine if seepage would in fact occur and that the proposed dwelling be moved closer to Arvin Avenue so that no construction would occur in the existing marsh and any modification of the terrain topography could be avoided. Id. The Conservation Commission recommended that if the Property failed the seepage dye test, construction be delayed until installation of the public sewage system. Id.
On August 19, 1976, CRMC published notice of a public hearing, scheduled for September 15, 1976, on appellants' application for assent from CRMC to construct and maintain a dwelling and individual sewage disposal system on the Property. See Notice of Public Hearing dated August 19, 1996. On September 15, 1976, the Department of Health suspended the ISDS permit previously issued to appellant Ryden on April 29, 1976 for the following reasons: "1) marsh noted within 200 feet of proposed disposal system not indicated on plan; and 2) soil description does not appear to match conditions on the site such that a witnessed test hole is required." See Notice of Suspension dated September 15, 1976.
Also in November 1976, the appellants prepared a revised site plan.See Plan dated November 4, 1976. On November 6, 1976, appellants requested from the Department of Health a variance for the construction of a wastewater disposal system. See Letter from Appellants to Department of Public Health dated November 6, 1976.
On November 7, 1976, appellant Ryden asked the Zoning Board for a six month extension on his previously granted variance. See Letter from Appellant Ryden to Board dated November 7, 1976. The Zoning Board approved his request on November 22, 1976. See Letter to Appellant Ryden from Board dated November 22, 1976.
On January 13, 1977, a Hearing Examiner for the Department of Health heard appellant Ryden's amended application for a variance for the design, construction and maintenance of an individual sewage disposal system based on revised plans submitted by appellant Ryden on February 9, 1977. See Department of Health Hearing Officer's Decision dated May 18, 1977. The Hearing Examiner granted that application, subject to certain conditions. Id. The administrative record before this Court does not include a record of that proceeding or the approved plan (marked as Exhibit A to the decision). The decision, by its terms, allows review and location approval by CRMC. Id. It found that "[t]o deny petitioner his variance on the evidence submitted would constitute a deprivation of the rightful use of his property without due process of law." Id. The approval followed the successful performance of the witnessed test pit that had been recommended. See ISDS Approval dated May 1977. It appears that the approval addressed the two previous concerns of the Conservation Commission: 1) that the dwelling be moved closer to the street; and 2) that the septic system not pollute the marsh. See Letter dated November 19, 1976 from Conservation Commission to CRMC.
According to appellant Ryden, two weeks after securing approval from the Department of Health, his mother died and he no longer needed to construct the planned retirement home. See Letter to Board from Appellant Ryden dated February 10, 1996. He continued to pay the taxes on the Property. Id.
In 1995, appellant Ryden decided, once again, to try to secure the necessary permits to construct a dwelling on the Property. He had Waterman Engineering prepare a new plan for a proposed three bedroom dwelling with two bathrooms, 1, 164 square feet of total living space, and a deck. See Site Plan dated December 1995. The proposed dwelling measured thirty feet by forty-two feet with buffers of twenty-five to thirty feet on Nahma Avenue, twenty feet on Arvin Avenue, twenty-five feet to the "silt fence erosion checks" on the part of the Property abutting lot 513 and fourteen feet to lot 238. Id. By this time, it appears that sanitary sewers had been installed, thereby obviating the need for an ISDS system. Id.
On February 12, 1996, appellant Ryden filed an Application for Special Use Permit, Use or Dimensional Variance by which he sought a special use permit to build within 100 feet of a wetland overlay district and a dimensional variance to allow construction within less than the required front yard set back. See Application No. 2584 dated February 12, 1996 ("the Application"). The Board issued a Notice of Public Hearing with respect to the Application for March 21, 1996. See Notice of Hearing.
On March 15, 1996, the Barrington Conservation Commission submitted its site review comments on the Application to the Zoning Board. See
Conservation Site-Review Comments on Wetlands Overlay District dated March 15, 1996. It recommended disapproval of appellant Ryden's Application. Id. It stated its reasons for disapproval, as follows:
 The structure is more removed from the wetland edge than the previous plan. In addition the plans for controlling surface runoff are an improvement. However, the structure is only setback 25 feet from the coastal feature. An adequate buffer from the wetland edge is necessary to protect the integrity of the wetlands and the local water quality. This property was previously a salt marsh which was filled at least in part. Wetland plants still grow within the filled area. The majority of the proposed building is within the 50 [feet] CRMC buffer; and entirely within the Barrington wetland overlay district. The commission does not believe this site is suitable for the structure proposed.
Id.
On March 21, 1996, the Board voted unanimously to deny the Application. See Minutes of March 21, 1996 Zoning Board Hearing (the "Minutes"). According to the Minutes, present at the hearing were appellant Ryden and his engineer, Larry Smith, of Waterman Engineering. The Chairman of the Board, James Purcell, read into the record the site review comments of the Conservation Commission recommending disapproval of the site plan and letters in opposition to the Application from the Land Conservation Trust and two neighbors. Id. The Land Conservation Trust, by letter, opposed any home construction on the Property, arguing that the entire Property is within 100 feet of wetlands and that the proposal would not even meet the requirements of the old zoning regulations. Another neighbor in the audience opposed the application and presented a letter from the abutters who also were in opposition. Id.
Accompanying the letters from the neighbors were copies of staff reports and a decision by CRMC that denied approval to build on Plat 32, Lot 187 (the so-called Abowitt property) that is directly across Nahma Avenue from appellant Ryden's property. See CRMC Decision dated June 13, 1995. The CRMC decision on the Abowitt's application to construct a three bedroom single family dwelling with a garage and no basement indicated that the proposed construction would have a reasonable probability of causing a detrimental impact upon the coastal resources of the state.Id.
The Minutes also summarize the discussion by members of the Board regarding the Application. Mr. Brenner, a member of the Zoning Board, opined that the standards for issuance of a special use permit had not been met because the new Zoning Ordinance prohibited construction on the wetlands to protect the environment, the Property was too wet to allow for construction of a dwelling, and such construction would increase contaminated run off into the wetlands. See Minutes of March 21, 1996 Zoning Board Hearing. He stated that he did not know whether this meant that the applicant had a piece of land that could not be built on. Id.
Mr. Sweetser, another member of the Zoning Board, indicated that he did not know what the applicant's options were regarding any construction, but that the Town's welfare came first. Id. He said that if the original development had gone before the Board, it would not have let it be built. Id.
Mr. Purcell, Chairman of the Zoning Board, and Ms. Goodman, another member of the Zoning Board, relied on the recommendations of the Conservation Commission and the Barrington Land Conservation Trust to disapprove the Application. These members thought that these entities had environmental expertise not possessed by the Board. Id. The Minutes reflect no discussion by Zoning Board member Thomas Kraig.
The Minutes containing the Board's reasons for denying appellant Ryden's Application stated as follows:
 It was the judgment of the Board that the applicant has not satisfactorily demonstrated the following with regard to the proposed use and its location on the site: A) that the public convenience and welfare will be substantially served; B) that it will be in harmony with the general purpose of this ordinance and with the Comprehensive Community Plan; C) that it will not result in or create conditions that will be inimical to the public heath, safety, morals and general welfare of the community; and D) that it will not substantially or permanently injure the appropriate use of the property in the surrounding area or district.
Id. at 3.
The Board sent appellants formal written notice of the denial of the Application. See Letter dated March 22, 1996 to Appellants from the Board.
Appellants Ernest and Lois Ryden filed a timely appeal of the Board's decision[2]. The certified record from the Zoning Board that was filed in connection with this appeal contains no audiotape recording or transcript of the March 21, 1996 hearing before the Board that is the subject matter of this appeal. According to appellants, the Board made an audiotape recording of the subject hearing, but it is unintelligible.See Plaintiffs Memorandum of Law at 5. The Board does not refute appellants' statement in this regard, but it failed to submit such a tape (assuming the tape exists in its purported unintelligible form) as part of the record on appeal.
On appeal, appellants initially assert that the Board's decision fails to meet the minimum requirements necessary for judicial review. They also contend that the Board's findings are not supported by the record and that they are entitled to issuance of a special use permit and a dimensional variance. Specifically, appellants assert that the uncontradicted expert testimony that they presented at the hearing clearly establishes that the proposed dwelling satisfies the criteria for a special use permit in that it is in harmony with the general purpose of the Zoning Ordinance and the Comprehensive Community Plan, it will substantially serve the convenience and welfare of the public, and it will not have a detrimental impact on the public health, safety, morals, or general welfare. Further, appellants argue that without the front yard setback, they will not be able to go forward with their plans to build a single family residence. Appellants argue that denying them their requested zoning relief will result in a regulatory taking of the Property without just compensation.
 Standard of Review
Under Rhode Island law, this Court possesses appellate review jurisdiction of a decision of a zoning board of review. R.I. General Laws § 45-24-69 (D). The subject statute provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Id.
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the findings of the zoning board of review.Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501. 507, 388 A.2d 821, 825 (1978)).
 Review of the Board's Decision
The Rhode Island Zoning Enabling Act of 1991 provides, in pertinent part, as follows:
 § 45-24-61. Administration — Decisions and records of zoning board of review.
 (a) Following a public hearing, the zoning board of review shall render a decision within a reasonable period of time. The zoning board of review shall include in its decision all findings of fact and conditions, showing the vote of each participating member, and the absence of a member or his or her failure to vote. Decisions shall be recorded and filed in the office of the city or town clerk within thirty (30) working days from the date when the decision was rendered, and is a public record. The zoning board of review shall keep written minutes of its proceedings showing the vote of each member upon each question, or, if absent or failing to vote, indicating that fact, and shall keep records of its examinations, findings of fact, and other official actions, all of which shall be recorded and filed in the office of the zoning board of review in an expeditious manner upon completion of the proceeding. For any proceeding in which the right of appeal lies to the superior or supreme court, the zoning board of review shall have the minutes taken either by a competent stenographer or recorded by a sound-recording device. . . .
R.I. Gen. Laws § 45-24-61 (a) (1991) (emphasis added).
By its express terms, the Act requires a zoning board to make a stenographic or audiotape recording of any zoning board hearing (inclusive of its examinations, findings of fact, and other official actions) if a right of appeal to the Superior or Supreme Court exists as to the matter being heard before it. Id.[3] The Act also requires a zoning board to include in its decision all of its findings of fact. Id.
The obvious intent of these provisions is to ensure that a reviewing court can review a zoning board's decision in light of the administrative hearing record underlying that decision. Ultimately, from the decision itself, the reviewing court must be able to determine the findings of fact and conclusions of law made by the zoning board in reaching its decision.
"It is well settled that a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible to judicial review."Cranston Print Works v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996). Such boards should "make express findings of fact and should pinpoint the specific evidence upon which they base their decision . . . because the parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt or unnecessary delay." Hopfv. Board of Review of the City of Newport, 102 R.I. 275, 288, 230 A.2d 420, 428 (1967).
Our Supreme Court has held that judicial review of a zoning board's decision is impossible "unless the board ha[s] made factual determinations and applied appropriate legal principles in such as way that a judicial body might reasonably discern the manner in which the board ha[s] resolved evidentiary conflicts." Cranston Print Works v. Cityof Cranston, 684 A.2d at 691. If the zoning board fails to state its findings of fact, this Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances. Hooperv. Goldstein, 104 R.I. 32, 241 A.2d 809 (1968). As our Supreme Court recently stated:
 [W]e must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusion, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible.
von Bernuth et al. v. Zoning Board of the Town of New Shoreham et al.,770 A.2d 396 (R.I. 2001) (quoting Irish Partnership v. Rommel,
518 A.2d 358-59 (R.I. 1986) (citations omitted)); see also Sciacca, etal. v. Caruso, et al., 769 A.2d 578 (R.I. 2001) (holding that zoning board decisions on variance applications address evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief).
The record submitted to this Court in connection with the instant appeal is fundamentally deficient. No stenographic record or audiotape recording of the March 21, 1996 hearing before the Board is included in the certified record of the hearing filed by the Board with this Court. While the Board certified that certain documents filed with the Court contain the record of the Zoning Board proceedings, it is difficult to determine who submitted those documents at the hearing and whether they were accepted by the Board as evidence and marked as exhibits at the hearing.
The absence of a written stenographic record or audiotape recording of the hearing violates the dictates of R.I. Gen. Laws § 45-24-61 (a). It denies this Court the opportunity to know what testimony and documentary evidence the Board heard and received. It denies this Court a mechanism to determine the accuracy of the Board's Minutes. It also prevents this Court from exercising its essential review function: to determine if substantial evidence exists to support the Board's decision. Particularly relevant in this regard is the absence of a transcript of any expert testimony presented at the hearing. These discrepancies in the hearing record submitted to this Court alone warrant a remand of this case to the Board for rehearing.
Moreover, even assuming that the absence of a stenographic transcript or audiotape recording of the hearing before the Board were not dispositive of this appeal, the Minutes and the Board's decision itself, being fundamentally deficient, would compel the same result. This is not a case where other means exist to provide adequate appellate review. SeePeople v. Bonaparte, 43 A.2d 1009 (N.Y. 1974) (holding that the appellate court would vacate the original judgment and grant a new trial to the appellant where the original stenographic tapes were lost or destroyed, and no other means existed to provide an adequate review of the case) (emphasis added).
The Minutes do not reflect the substance of either the testimony or documents submitted at the hearing. The paragraph of the Minutes entitled "Reasons for Decision" represents a mere summary statement by the Board that the applicant failed to satisfy the stated criteria for issuance of a special use permit. It does not demonstrate to this Court how the Board resolved conflicts in the evidence, made findings of fact or applied the controlling law to the evidence presented at the hearing to render its decision. It also makes no reference to the applicant's request for a dimensional variance.
The portion of the Minutes reflecting discussion by the Board suggests that at least some members of the Board may have relied on the written site-review comments of the Conservation Commission and a letter in opposition from the Barrington Land Conservation Trust to disapprove the Application because of the "environmental expertise" of those entities. Yet, it does not appear that the individuals who authored these letters were present or examined at the hearing as experts. It also is unclear as to the basis upon which Board members may have rejected the testimony of appellant's Ryden's expert engineer in favor of reports by individuals who may not have been present and examined.
In addition, the certified record contains numerous documents regarding prior zoning permission and building permits granted to appellant Ryden to build on the Property. The Minutes do not indicate whether the Board considered this evidence or its basis for distinguishing these past decisions from the instant Application.
Moreover, the discussion portion of the Minutes and documents included in the certified record appear to suggest that a dwelling may never be constructed on the Property under the applicable zoning regulations. The Land Conservation Trust certainly took that position in its letter to the Board, and at least two Board members relied on its position in voting to disapprove the Application. The site review comments submitted to the Board by the Conservation Commission are less clear. While the Conservation Commission clearly opposed the proposed structure, it is difficult to determine from its comments whether it would approve any
construction on the Property. For the Board to suggest on appeal that its decision was confined to the precise dwelling reflected on the plans submitted by appellant Ryden thus may be misleading. Without findings of fact and conclusions of law stated in the Board's decision, this Court cannot determine if the Board intended, by its decision, to bar construction of any dwelling on the Property and, if so, its rationale for that decision. This Court cannot determine if the Board considered its past decisions with regard to the Property in this regard. The Minutes and the Board's decision, therefore, deprive this Court of meaningful appellate review.
Accordingly, this Court is constrained to remand this case to the Board for a rehearing on the Application. That hearing must be fully transcribed by a stenographer or audiotape recording. At that hearing, the Board should consider expert testimony and other evidence as to whether appellant Ryden can meet the legal criteria for issuance of a special use permit.[4] The Board also should consider appellant Ryden's request for a dimensional variance.[5] The Board's decision upon rehearing should include explicit findings of fact and conclusions of law, and the vote of each Board member thereon, as required by the 1991 Zoning Enabling Act.
 Conclusion
Accordingly, this case is remanded to the Zoning Board of Review of the Town of Barrington for rehearing and decision forthwith in accordance with this Court's decision. This Court retains jurisdiction over this case, and it may be invoked by either party through the filing of an appeal from a decision of the Board after remand. Any such appeal must be filed within 30 days after the filing of the Board's decision.
Counsel shall agree upon a proposed form of order and judgment, reflective of this Court's decision, and submit it to the Court forthwith for entry.
[1] Section 185-73 of the Barrington Zoning Ordinance provides: "General Standards. A use requiring a special use permit in Article IV and elsewhere in this chapter may be permitted by the Zoning Board of Review following a public hearing only if, in the opinion of the Board such proposed use and its location on the site meets each of the following requirements:
A. The public convenience and welfare will be substantially served.
B. It will be in harmony with the general purpose of this chapter, and with the Comprehensive Community Plan.
C. It will not result in or create conditions that will be inimical to the public health, safety or morals and general welfare of the community.
D. It will not substantially or permanently injure the appropriate use of the property and surrounding area or district."
[2] The appellants filed their appeal in the Superior Court on April 9, 1996. The matter was not fully briefed and assigned for decision for over two years thereafter. In December 1998, the appellants requested oral argument. This Court deferred any decision with respect to the request for oral argument pending receipt and review of the parties' memoranda. At the time the appellants filed the order by which the Court reserved oral argument, the case file and subject memoranda were mistakenly sent to the Records Center rather than returned to the Court for decision. This error was not brought to the Court's attention until March 22, 2002. After review of the memoranda filed, this Court deems oral argument to be unnecessary.
[3] "Prior to passage of the Zoning Enabling Act of 1991, verbatim transcripts of what occurred in the hearing before a zoning board were held to be preferable but the failure to furnish such a record was not necessarily fatal on appeal." Roland F. Chase, Rhode Island ZoningHandbook, § 165 (1993).
[4] A special use permit, formerly referred to as a "special exception," is defined as a regulated use which is permitted pursuant to the special-use permit issued by the authorized governmental entity. pursuant to RI. Gen. Laws § 45-24-42. RI. Gen. Laws § 45-24-31
(57); see also Dante J. Giammarco, Rhode Island Land Use, 56-58 (National Business Institute 2001); see also Nani v. Zoning Bd. of Review,104 R.I. 150, 242 A.2d 403 (1963). The standards for granting a special use permit are set forth in Section 185-73 of the Barrington Zoning Ordinance. See n. 1, supra.
[5] A dimensional variance, as distinguished from the true variance or the special use permit, is a form of zoning relief that offers relief not from a use prohibited for a property, but from regulations that govern the enjoyment of that permitted use. RI. Gen. Laws § 45-24-41 (d) (2); RI. Gen. Laws § 45-24-31 (61) (ii); Barrington Code § 185-69, § 185-70, § 185-71; Sciacca v. Caruso, 769 A.2d 578, 582 (2002). The Board may consider whether a special use permit application may be considered in conjunction with an application for a dimensional variance. See the Barrington Code § 185-72; see also Newton v. ZoningBoard of Review of City of Warwick, 713 A.2d 239 (RI. 1998).